**In re TRIPLE S RESTAURANTS, INC., Debtor.**

**Bankruptcy No. 94–32848.**

United States Bankruptcy Court, W.D. Kentucky.

Dec. 13, 1996.

Amended Order Feb. 5, 1997.

David Chinn, Louisville, KY, Pro Se.

Baxter Schilling, Trustee, Louisville, KY.

Joseph Golden, Assistant U.S. Trustee, Louisville, KY.

## *MEMORANDUM*

DAVID T. STOSBERG, Bankruptcy Judge.

The Court confronts today the troubling question of unauthorized postpetition transfers of retainer funds by debtor's counsel.

### *Factual Background*

This case began as a Chapter 11 proceeding on September 30, 1994. On November 10, 1994, David Chinn ("Chinn") filed a Motion requesting approval to act as counsel for the Chapter 11 debtor-in-possession, disclosing the receipt of a $10,000 retainer. (*See* docket # 21). The United States Trustee objected to Chinn's employment and the Court scheduled a hearing to consider approval of Chinn's employment as debtor's counsel. Following that hearing, the Court converted the case to a Chapter 7, which mooted the question of Chinn's employment (*See* docket # 3). Chinn's employment was therefore never approved by the Court.

The situation involving Chinn's postpetition transfer of the retainer recently came to the Court's attention through the Chapter 7 Trustee, Baxter Schilling ("Schilling"). Schilling obtained a Court Order on March 10, *1995* directing Chinn to turn over certain documents to the Trustee, including bank statements. Schilling was unable to review the debtor-in-possession records as they had been destroyed. On numerous occasions, Chinn promised to willingly provide these documents to Schilling and Schilling granted Chinn several extensions. After Chinn failed to comply with the Court's Order for a period in excess of a year, Schilling, on August 19, 1996, filed a Motion to Hold Debtor's Counsel in Contempt. In the face of Schilling's contempt motion, on August 19, 1996, Chinn finally provided the requested documents to Schilling.

On September 30, 1996, the Court conducted a hearing to consider Schilling's motion to

hold Chinn in contempt of Court. It was at that time that Schilling disclosed to the Court that he had reviewed the bank statements which Chinn eventually provided, only to find that Chinn had made unauthorized transfers of the debtor's monies. Particularly, at the September 30, 1996 hearing, Chinn acknowledged receipt of a $10,000 retainer prior to the Chapter 11 filing. Chinn then stated in open Court that he paid $5,000 of the retainer to Donald Heavrin ("Heavrin") for Chinn's personal rent, and "spent" the remaining $5,000. Heavrin acted as in-house counsel for the debtor prior to the bankruptcy filing. Heavrin, clearly an "insider" pursuant to 11 U.S.C. § 101(31), received one-half of the retainer soon after the filing.

In violation of the rules governing attorneys, Chinn deposited the retainer directly into his general operating account. *See* SCR 3.130(1.15(a)). Chinn admitted that he never obtained Court approval of any fees for services performed in this proceeding. Chinn contends, rather disingenuously, that the conversion of the case prevented him from filing the necessary fee application; yet, a review of the file reveals that Chinn's own fee agreement provides specifically for Bankruptcy Court approval of all legal fees and expenses prior to any disbursement. (*See* attachment to docket # 21).

The Court granted Chinn yet another opportunity to explain the unauthorized transfer by scheduling a hearing directing Chinn to appear and show cause why the retainer should not be paid into the estate and further, why sanctions should not be imposed for Chinn's failure to comply with the Court's Order entered March 10, 1995, which directed Chinn to provide the documents requested by Schilling.

Despite having twenty-eight (28) days, Chinn filed no pleading or document whatsoever prior to the show cause hearing. At the show cause hearing, Chinn offered no explanation for his failure to comply with the rules governing client funds. The only explanation offered by Chinn was that he was suffering from "dire financial circumstances" at the time of the unauthorized transfer. Only after the show cause hearing did Chinn file an Application for Nunc Pro Tunc Allowance of Compensation and Reimbursement of Expenses, seeking after-the-fact approval of fees and expenses for services performed from September 28, 1994 through August 6, 1996 in the total sum of $17,543.75. Obviously Chinn did not act as counsel for the Trustee. Nonetheless, most of the fees for which Chinn filed the belated request for approval were for services performed during the Chapter 7 proceeding.

The Court requested a copy of the check evidencing the retainer received by Chinn from the debtor and an accounting setting forth the application of these funds by Chinn, however, neither has been provided to the Court. On November 20, 1996, the Court ordered Chinn to obtain a copy of the check from his depository within three (3) business days and for Chinn to file a copy of the check with the Court within three (3) days of his receipt of the check from his depository. Chinn has filed nothing in response to the Court's Order of November 20, 1996.

### *Legal Analysis*

With reference to the requirement of segregating client funds, the Rules of the Supreme Court of Kentucky provide:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation *separate from the lawyer's own property.* Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation. (Emphasis added).

SCR 3.130(1.15(a)). *Safekeeping Property.* The Comment to the Rule further provides that "A lawyer should hold property of others with the care required of a professional fiduciary. All property which is the property of clients ... should be kept separate from the lawyer's business and personal property and, if monies, in one or more trust accounts."

■ Chinn's conduct in depositing the retainer funds into his general operating account flies directly in the face of this Rule. Where attorneys have commingled client funds with nonclient funds in violation of SCR 3.130(1.15(a)), suspension from the practice of law and even disbarment are warranted. *See, Goble v. Kentucky Bar Ass'n,* 845 S.W.2d 548 (Ky.1993) (attorney's offer to resign from the KBA under terms of suspension for a period of five years accepted). *See also, Kentucky Bar Ass'n v. Watson,* 875 S.W.2d 96 (Ky.1994) (where attorney spent, borrowed and used client money without authorization, and failed to keep client's money separate, disbarment was warranted).

### Conclusion

Chinn's conduct is contradictory to the overall mandate in bankruptcy proceedings of full and complete disclosure. Chinn's role as counsel for a Chapter 11 debtor carried with it fiduciary-type responsibilities to insure that the debtor-in-possession properly administered property of the estate. Chinn's unauthorized transfer of estate property amounted to a flagrant breach of his duties as debtor's counsel. Chinn's level of experience in the legal profession and years of practice in the bankruptcy arena prevent him from pleading ignorance of the law, particularly in light of his fee agreement which recites the requirement of court approval. Although not before the Court at this time, Heavrin's conduct in accepting a portion of the funds in payment of Chinn's personal rent obligation is likewise deplorable, especially in light of his insider status.

We surmise that Chinn's delay in providing the Court-ordered documents to Schilling was in reality an attempt to prevent the Trustee from discovering the unauthorized transfer of the retainer funds. Chinn converted at least $10,000 of estate property to his own use. Chinn's deliberate failure to disclose the unauthorized transaction, and his perplexing failure to demonstrate to the Court any justification for his actions, warrant the imposition of severe sanctions.

The Court elects to impose sanctions against Chinn as follows:

1). We shall order Chinn to refund the retainer funds to the Trustee;

2). By unanimous decision of all three divisions of this Bankruptcy Court, Chinn will be barred from practicing law in the United States Bankruptcy Court for the Western District of Kentucky for a period of two (2) years from the date of entry of the attached Order.

Our sanctions relate to the violation of the Rules of the Supreme Court of Kentucky and the Bankruptcy Code and Rules. A copy of this Memorandum and the related Order will be forwarded to the Kentucky Bar Association for appropriate action.

We have entered an Order this same date consistent with the conclusions of this Memorandum.

### MEMORANDUM

■ This case comes before the Court on the Motion of David Chinn (hereinafter "Chinn") to Alter or Amend the Court's Order entered December 13, 1996, wherein the Court imposed certain sanctions against Chinn.

The Court conducted a hearing on the Motion and, thereafter, conducted conferences with the parties. Chinn has now paid the sum of $10,000.00 to the Trustee which leaves the Court only the issue of Chinn's suspension from practice before this Court. After carefully considering the entire circumstances, the Court elects to reduce the suspension period from two (2) years to six (6) months with the understanding that Chinn will not appeal any Order reducing the suspension period.